**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02974-NYW

ACCESS 4 ALL INCORPORATED, and
CARLOS CUESTA,

      Plaintiffs,

v.

SILVER OAK ASSOCIATES, LTD., LLP, and
CRAZY ASIAN EXPRESS INC.,

      Defendants.

---

## ORDER

---

This matter is before the Court on the following pending motions:

(1)      Defendants Silver Oak Associates, Ltd., LLP ("Silver Oak") and Crazy Asian Express Inc.'s ("Asian Express" and, collectively, "Defendants") Joint Motion to Strike Untimely Expert Reports ("Motion to Strike"), [Doc. 29, filed May 13, 2022];

(2)      Defendant Silver Oak's Motion for Summary Judgment, [Doc. 35, filed June 23, 2022]; and

(3)      Defendant Asian Express's Motion for Summary Judgment (together with Silver Oak's Motion for Summary Judgment, the "Motions for Summary Judgment"), [Doc. 36, filed June 23, 2022].

Defendants' Motion to Strike is fully briefed, *see* [Doc. 29; Doc. 34; Doc. 37], and the time for Plaintiffs Access 4 All Incorporated and Carlos Cuesta to respond to the Motions for Summary Judgment has lapsed. *See* D.C.COLO.LCiv R. 7.1(d). Upon review of the record, this court finds that oral argument would not materially assist in the resolution of any of these motions. For the

reasons set forth herein, the Court respectfully **GRANTS** the Motion to Strike; **GRANTS IN PART AND DENIES IN PART** Silver Oak's Motion for Summary Judgment; and **GRANTS IN PART AND DENIES IN PART** Asian Express's Motion for Summary Judgment.[1]

## BACKGROUND

Plaintiffs Access 4 All Incorporated ("Access 4 All") and Carlos Cuesta ("Mr. Cuesta" and, together with Access 4 All, "Plaintiffs") initiated this action on November 5, 2021, asserting two counts of violations of the Americans with Disabilities Act ("ADA"). [Doc. 1]. Specifically, Plaintiffs allege that Silver Oak "owned and operated a commercial retail center and place of public accommodation located at 4701 Peoria Street, Denver, Colorado 80239" ("Shopping Center"), [*id.* at ¶ 7], and Asian Express "owned and operated a commercial restaurant business and place of public accommodation located at 4701 Peoria Street, Denver, Colorado 80239" ("restaurant" and, collectively with the Shopping Center, the "Commercial Property" or "Property"), [*id.* at ¶ 9]. Mr. Cuesta alleges he is a person with disabilities; that he visited the Property in September 2021; and that he found the Property "rife with ADA violations" in the form of architectural barriers. [*Id.* at ¶¶ 14–18].

As a result, in Count I, Plaintiffs allege that Silver Oak failed to comply with the ADA in its parking, entrance access, and path of travel features. [*Id.* at ¶¶ 24–25]. In Count II, Plaintiffs allege all Defendants failed to comply with the ADA with respect to access to goods and services and configurations of the restroom at the restaurant. [*Id.* at ¶¶ 27–28]. Plaintiffs seek injunctive relief pursuant to 42 U.S.C. § 12188, and an award of reasonable attorney's fees and costs pursuant

---

[1] This civil action was originally assigned to the undersigned in her capacity as Magistrate Judge for a decision on the merits pursuant to the Parties' consent. *See* [Doc. 13]; [Doc. 14]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. On July 22, 2022, Judge Nina Y. Wang was appointed as a United States District Judge and retained assignment to this action as the presiding judge. *See* [Doc. 38].

to 42 U.S.C. § 12205.  [*Id.* at 11].  In addition, Plaintiffs alleged that the violations alleged in the Complaint "are not an exclusive list of the Defendants' ADA violations" and requested an inspection of the Commercial Property "in order to photograph and measure all of the" alleged violations.  [*Id.* at ¶ 29].

Defendants filed their respective Answers on January 4, 2022.  [Doc. 16; Doc. 17].  Then, the Parties proceeded to a Scheduling Conference, and this court entered a Scheduling Order on January 10, 2022.  [Doc. 18; Doc. 20].  The Scheduling Order set a deadline for Joinder of Parties and Amendment of Pleadings of January 10, 2022; a deadline for discovery of January 10, 2022; and a dispositive motions deadline of June 23, 2022.  [Doc. 20 at 7].  In addition, the Court ordered Plaintiffs to disclose any experts and provide opposing counsel with the information required by Federal Rule of Civil Procedure 26(a)(2) not later than March 24, 2022; Defendants to disclose all affirmative and rebuttal experts by April 28, 2022; and Plaintiffs to disclose any rebuttal experts by May 12, 2022.  [*Id.* at 8–9].  Further, the Parties were advised that in addition to the requirements of Rule 26(a)(2)(B)(i)–(vi), an expert's written report must also identify the principles and methods on which the expert relied in support of his opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.  [*Id.* at 9].  All motions brought pursuant to Rule 702 of the Federal Rules of Evidence challenging expert opinions were due on June 23, 2022.  [*Id.*].

On May 13, 2022, Defendants jointly filed the instant Motion to Strike, seeking to strike in their entirety the opinions of Plaintiffs' expert witness, Gene Mattera ("Mr. Mattera"), contained in two expert reports, pursuant to Federal Rules of Evidence and Rule 37(c)(1) of the Federal Rules of Procedure.  [Doc. 29].  Plaintiffs responded to the Motion to Strike on June 10, 2022, [Doc. 34], and Defendants replied on June 23, 2022, [Doc. 37].  The same day, Defendants each filed a

Motion for Summary Judgment.  [Doc. 35; Doc. 36].  Plaintiffs did not respond to either Motion

for Summary Judgment, and the time to do so has lapsed.  *See* D.C.COLO.LCivR 7.1(d).  A Final

Pretrial Conference is currently scheduled for October 12, 2022.  [Doc. 39].  The motions are thus

ripe for disposition.

## ANALYSIS

### I.    Motion to Strike

Defendants seek to strike in their entirety the opinions of Plaintiffs' expert witness, Gene

Mattera ("Mr. Mattera"), contained in two expert reports.  [Doc. 29].  By way of background,

Defendants explain that, on December 20, 2021, Plaintiffs identified Mr. Mattera as their

affirmative expert in their Rule 26(a)(1) Initial Disclosures, [*id.* at 2; Doc. 29-1 at 2], and they

simultaneously disclosed an "Initial Inspection expert report" ("Initial Report") prepared by Mr.

Mattera, [Doc. 29-1 at 3], consisting of nine pages and identifying fifteen alleged ADA violations

at the Commercial Property, [Doc. 29-2].  Mr. Mattera's Initial Report is dated October 18, 2021,

[*id.* at 1], more than two weeks before Plaintiffs filed the Complaint, [Doc. 1].

On March 2, 2022, Mr. Mattera inspected the Commercial Property pursuant to Rule 34.

[Doc. 29 at 2].  However, on March 24, 2022—Plaintiffs' deadline to disclose their affirmative

experts—Plaintiffs did not supplement Mr. Mattera's expert report at all.  Instead, Plaintiffs'

counsel sent Defendants an email which simply stated, "[w]e previously designated our affirmative

expert through our initial disclosures" sent in December 2021.  [Doc. 29 at 2–3; Doc. 29-3 at 1–

2].  Based on Plaintiffs' counsel's email, Defendants concluded that Mr. Mattera's Initial Report

they received with Plaintiffs' initial disclosures constituted the expert report containing "a

complete statement of all opinions the witness will express and the basis and reasons for them,"

pursuant to Rule 26(a)(2)(B)(i) and the Scheduling Order.  [Doc. 29 at 3].  Thereafter, Defendants

engaged their own expert witness, John Garra ("Mr. Garra"), to rebut Mr. Mattera's opinions in

the Initial Report and, on April 28, 2022, "timely disclosed Mr. Garra, his reports, and the other information required" under Rule 26(a)(2)(B) and the Scheduling Order.  [Doc. 29 at 3]; *see also* [Doc. 29-4; Doc. 29-5].

Then, on May 4 and 5, 2022, Plaintiffs' counsel emailed Defendants an "inspection report" and an "updated report" (collectively, the "Supplemental Reports"), respectively.  [Doc. 29-6; Doc. 29-7].  The Supplemental Reports are both authored by Mr. Mattera, and each document references Mr. Mattera's March 2, 2022 inspection of the Commercial Property.  *See* [Doc. 29-6 at 2; Doc. 29-7 at 2].  In addition, unlike the Initial Report—which contains nine pages and identifies 15 alleged ADA violations—the "inspection report" is 44 pages long and identifies 84 alleged violations, *see* [Doc. 29-6 at 2–45], and the "updated report" is 36 pages long and identifies 75 alleged violations, *see* [Doc. 29-7 at 2–38].[2]  When Defendants' counsel questioned Plaintiffs' counsel about the basis for the Supplemental Reports, Plaintiffs' counsel claimed that the Supplemental Reports constituted rebuttal reports disclosed before their May 12, 2022 deadline to disclose rebuttal experts.  [Doc. 29 at 4].  Thus, Defendants seek to strike the Supplemental Reports on the basis that (1) Plaintiffs failed to disclose those reports by their March 24, 2022 deadline to designate affirmative experts, (2) their untimely disclosure is not harmless, and (3) the Supplemental Reports do not contain rebuttal opinions.  [*Id.* at 5–7].

In their response, Plaintiffs insist that the Supplemental Reports constitute Plaintiffs' rebuttals to the opinions of Defendants' expert, Mr. Garra.  [Doc. 34 at 1–3].  Thus, Plaintiffs' argument continues, the disclosures were timely because Plaintiffs disclosed the reports before their May 12, 2022 deadline to designate their rebuttal experts.  [*Id.* at 1–2].  On Reply, Defendants

---

[2] The "updated report" omits violation nos. 8, 23, 34–38, 45, and 46 contained in the May 4, 2022 "inspection report."  *See* [Doc. 29-7 at 9–17].

accuse Plaintiffs of "deliberately misunderstand[ing]" the basis for the Motion to Strike "in order to defend" their improper disclosure. [Doc. 37 at 1]. Defendants also contend that Plaintiffs fail to meet their burden of showing that they were substantially justified in failing to comply with Rule 26(a) and that such failure was harmless. [*Id.* at 6].

### A.    Legal Standards

### 1.    Federal Rule of Civil Procedure 26

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that a party must disclose to all other parties the identity of any person who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(a)(2)(A). With respect to expert witnesses, the Rule further provides that "[u]nless otherwise stipulated or ordered by the court, . . . the disclosure must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). This expert report must include (1) a complete statement of all of the witness's opinions; (2) the facts or data considered by the witness in forming those opinions; (3) any exhibits that will be used to summarize or support the opinions; (4) the witness's qualifications; (5) a list of other cases in which the witness testified as an expert in the last four years; and (6) a statement of the compensation to be paid to the expert witness. Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi).

Rule 26(a)(2) obligations cannot be ignored or dismissed as a mere formality. *Anderson v. Seven Falls Co.*, No. 12-cv-1490-RM-CBS, 2013 WL 3771300, *5 (D. Colo. July 18, 2013). Rather, such disclosures are intended to "aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Id.* (citing *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000)).

In addition, the Federal Rules impose a duty on parties to supplement their expert reports if a party learns that their disclosures are incomplete or incorrect in some material respect and if the additional or corrective information has not otherwise been made known to the opposing party during the discovery process or in writing.  Fed. R. Civ. P. 26(e)(1)(A).  "The obligation to supplement arises when the disclosing party reasonably should know that its prior [expert disclosures] are incomplete." *Jama v. City & Cty. of Denver*, 304 F.R.D. 289, 299–300 (D. Colo. 2014).  "Permissible supplementation under the Rules . . . 'means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'"  *Seidman v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-03193-WJM-KMT, 2016 WL 9735768, at *4 (D. Colo. May 26, 2016) (quoting *Cook v. Rockwell Intern. Corp*., 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006)); *see also Arrington v. Chavez*, No. 12-cv-00172-LTB-KLM, 2014 WL 1874842, at *2 (D. Colo. May 9, 2014) (observing that new information that was previously unavailable to a party may form a proper basis for the supplementation of an expert report).  However, Rule 26(e) is "not intended to provide an extension of the expert designation and report production deadline" and may not be used for that purpose.  *Metro Ford Truck Sales, Inc. v. Ford Motor Co*., 145 F.3d 320, 324 (5th Cir. 1998).  The moving party bears the burden of establishing a Rule 26(e) violation.  *Curtis v. Lever Up Inc.*, No. 20-cv-01873-DDD-NYW, 2021 WL 5498301, at *7 (D. Colo. Nov. 24, 2021).

### 2.    Rule 37(c)(1) of the Federal Rules of Civil Procedure

A violation of Rule 26(a)(2) is addressed by the court pursuant to Rule 37(c) of the Federal Rules of Procedure. Rule 37(c)(1) states that where a party fails to make a disclosure required by Rule 26(a) or Rule 26(e), that party may not use at trial any witness or information not so disclosed, unless the court determines that the failure to disclose was substantially justified or

harmless.  Fed. R. Civ. P. 37(c)(1).  The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the court.  *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  In exercising its discretion, the court considers four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.  *Id.*

"While Rule 37(c)(1) is written in mandatory terms, it also vests the court with discretion to impose 'other appropriate sanctions' in addition to or in lieu of an order striking witnesses or evidence not properly disclosed."  *Id.*; *see also* Fed. R. Civ. P. 37(c)(1)(C).  "A trial court has considerable discretion to determine an appropriate sanction under Rule 37 and the particular circumstances of a given case."  *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *17 (D. Colo. Feb. 8, 2010); *see also Bedford v. Nowlin*, No. 20-7070, 2021 WL 3148953, at *3 (10th Cir. July 26, 2021).

The non-moving party bears the burden of showing they were substantially justified in failing to comply with Rule 26(a)(1), and that the failure was harmless.  *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004) (citing *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D. Kan. 1995)).  For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance.  *Nguyen,* 162 F.R.D. at 680.  In addition, "[f]ailure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure."  *Id.*

B.      **Application**

1.      **Whether a Rule 26 Violation Occurred**

Before considering whether Plaintiffs' Supplemental Reports should be stricken, the Court must first determine whether those reports violate Rule 26.  Defendants do not make an express argument under Rule 26, but instead combine their analysis of Plaintiffs' expert disclosures under Rule 26 with their arguments under Rule 37.  *See* [Doc. 29 at 4–8].  Nevertheless, Defendants argue that Plaintiffs violated Rule 26 by disclosing the Supplemental Reports on May 4 and 5, 2022, six weeks after their March 24, 2022 affirmative expert deadline in the Scheduling Order. [Doc. 29 at 5].  Specifically, Defendants contend that because the Supplemental Reports describe alleged violations that Mr. Mattera observed during his March 2, 2022 inspection of the Property, "the subject matter of, and opinions contained within" the Supplemental Reports "are akin in that respect to an affirmative expert witness."  [*Id.* at 7].  Defendants reject the idea that the Supplemental Reports constitute rebuttal reports, and point out that Mr. Mattera's March 2, 2022 inspection occurred three weeks before the March 24, 2022 affirmative expert deadline and 57 days before Defendants served their expert disclosures on April 28, 2022.  [*Id.*]; *see also* [Doc. 29-4; Doc. 29-5].

In response, Plaintiffs disagree with Defendants' characterization of the Supplemental Reports as affirmative expert reports and, instead, insist that they are rebuttal reports.  *See* [Doc. 34 at 1–3].  Thus, Plaintiffs continue, the Supplemental Reports were timely because Plaintiffs disclosed the reports on May 4 and 5, 2022, which was before their May 12, 2022 deadline to designate their rebuttal experts.  [*Id.* at 1–2].

The Court respectfully agrees with Defendants, and finds that there is no legitimate dispute that the Supplemental Reports reflect affirmative expert opinions, and not rebuttal opinions.  "Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal

enjoyment of public accommodations. Generally, the failure to remove architectural barriers is discrimination under the ADA unless removal is not "readily achievable." *Brito v. Dunahay Properties Lllp*, No. 18-cv-0366-MSK-MEH, 2019 WL 4192111, at *2 (D. Colo. Sept. 4, 2019) (internal quotation marks and citations omitted).  The plaintiff in a Title III action under the ADA bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, and the defense that removal is not "readily achievable" is an affirmative defense, on which a defendant bears the burden of proof.  *Id.*

The purpose of affirmative expert testimony is "to establish a party's case-in-chief," *Session v. Romero*, No. 14-cv-02406-PAB-KLM, 2019 WL 190987, at *6 (D. Colo. Jan. 14, 2019) (citation and internal quotation marks omitted), while rebuttal expert testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Romero*, 2019 WL 190987, at *6 ("Rebuttal experts are not permitted to 'put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" (quoting *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. Apr. 21, 2016)).  "When expert reports simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, they do not qualify as proper rebuttal or reply reports."  *Id.* (citation and internal quotation marks omitted); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party."); *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 3894444, at *15 (N.D. Ill. Sept. 30, 2010) (explaining that expert rebuttal reports "are by nature responsive,

and necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived" (internal quotation marks omitted)).

Plaintiffs' Supplemental Reports bear none of the hallmarks of proper rebuttal testimony, and this Court is unpersuaded by their attempt to characterize the Supplemental Reports as such. The reports do not (1) refer to Mr. Garra, (2) refer to Mr. Garra's Reports, *see* [Doc. 29-4; Doc. 29-5], (3) state that their purpose is to rebut Mr. Garra's Reports, or (4) discuss any of Mr. Garra's stated opinions, which are clearly identified in Mr. Garra's Reports. *See* [Doc. 29-6; Doc. 29-7]. And Mr. Garra does not offer opinions that any suggested method of barrier removal is *not* "readily achievable," *see* [Doc. 29-4 at 7–11; Doc. 29-5 at 5–6], an issue on which Defendants would bear the burden of proof,[3] that might trigger a rebuttal opinion from Mr. Mattera. Indeed, in the first of his Supplemental Reports, disclosed on May 4, 2022, [Doc. 29-6], Mr. Mattera does not expressly opine that removal of any of the identified barriers is readily achievable, i.e., what is "easily accomplishable and able to be carried out without much difficulty or expense," 42 U.S.C. § 12181(9). *See* [Doc. 29-2; Doc. 29-6 at 7–34 (repeatedly indicating in "Remarks & Timeline to Remediate" "No timeline value designated")].[4] Finally, there is no dispute that the Supplemental Reports are based on Mr. Mattera's inspection of the Commercial Property on March 2, 2022— i.e., 57 days *before* Defendants disclosed Mr. Garra's Report. *See* [Doc. 29-4; Doc. 29-5].[5]

---

[3] The Tenth Circuit has explained that the plaintiff must first present evidence "suggest[ing] that the method of barrier removal is readily achievable under the particular circumstances." *Colo. Cross Disability Coalition v. Hermanson Fam. Ltd. P'ship I*, 264 F.3d 999, 1002 (10th Cir. 2001). Then, if the plaintiff meets his or her burden, the defendant "bears the ultimate burden of persuasion that barrier removal is not readily achievable." *Id.* at 1002–03.

[4] Only the second Supplemental Report, [Doc. 29-7], identifies which barrier removals are readily achievable. *See, e.g.*, [*id.* at 7, 9–12].

[5] Plaintiffs do not argue that the Supplemental Reports were propounded pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. Even if they had, the Supplemental Reports exceed the bounds of proper supplementation under Federal Rule of Civil Procedure 26(e)(1). Plaintiffs were ordered to designate affirmative experts by March 24, 2022, including to provide "all information

In sum, the Court finds that Plaintiffs violated Rule 26 and the Scheduling Order in failing to produce the Supplemental Reports by the March 24, 2022 deadline to designate affirmative experts.[6]

### 2. Whether the Supplemental Reports are Subject to Exclusion Pursuant to Rule 37

Because the Supplemental Reports are not proper supplements under Rule 26(e)(1) and are untimely as affirmative reports, the Court finds that they are subject to exclusion under Rule 37(c). Specifically, Plaintiffs do not show that their failure to comply with Rule 26 was substantially justified or harmless.

---

specified" under Rule 26(a)(2). *See* [Doc. 20 at 8]. Nevertheless, Plaintiffs waited until more than a month after that deadline to submit the Supplemental Reports, despite that the information contained in those reports was available to them three weeks before their deadline. In this light, Plaintiffs reasonably should have known that their prior expert disclosures (i.e., the Initial Report) was incomplete before their March 24, 2022 affirmative expert designation deadline, when Plaintiffs' counsel sent an email to Defendants' counsel stating, "[w]e previously designated our affirmative expert through our initial disclosures below." *See Jama*, 304 F.R.D. at 299–300. However, Plaintiffs failed to do so. As a result, insofar as Plaintiffs attempted to use Rule 26(e) as an extension of the expert designation and report production deadline, such attempt was improper. *See Metro Ford Truck Sales*, 145 F.3d at 324.

[6] Plaintiffs also claim that the Supplemental Reports "deal[] with several issues with *newly modified* barriers" in "[a]reas that had been modified during the pendency of this case." [Doc. 34 at 3]. Specifically, Plaintiffs contend that Defendants, in making modifications to the Commercial Property, "created new barriers to access" on the Property. [Doc. 34 at 3]. Plaintiffs assert that "[t]hose changes occurred after" they visited the Property "and were present at the time [Mr. Mattera] inspected the property." [*Id.*]. Plaintiffs also claim that they "have revisited the property and actually encountered these barriers." [*Id.* at 3 n.4]; *see also* [*id.* at 4 ("Several of these barriers [in the Supplemental Reports], pursuant to Plaintiffs' expert, did not exist at the time of the initial report and were discovered during the course of discovery after modifications were made to the property.")]. This line of argument lacks basis. Not only do Plaintiffs fail to specifically identify any of the several "new barriers to access" they claim that Defendants created, but their argument entirely ignores that, according to the Supplemental Reports, Mr. Mattera inspected the Property on March 3, 2022—three weeks before Plaintiff's deadline to disclose affirmative experts on March 24, 2022. Moreover, Plaintiffs' argument regarding new barriers identified in the Supplemental Reports that "did not exist at the time of the initial report" directly contradicts Plaintiffs' assertions that the Supplemental Reports (1) "only discuss[] areas already at issue or mentioned in the initial report, and Defendants already had notice of the violations," and (2) "deal[] with the same area of the property identified in the initial report." [Doc. 34 at 5].

As Defendants point out, Plaintiffs fail to explain why they waited until May 4 and 5, 2022 to disclose the Supplemental Reports that were written based on Mr. Mattera's March 2, 2022 inspection of the Property.  *See* [Doc. 37 at 6].  Plaintiffs also fail to explain how the Supplemental Reports reflect anything other than affirmative opinions that Plaintiffs were required to produce by the March 24, 2022 deadline in the Scheduling Order.  *See* [Doc. 20 at 8].  And Plaintiffs further fail to provide any legitimate explanation as to how the Supplemental Reports—again, based expressly on Mr. Mattera's March 2, 2022 inspection—could actually constitute a rebuttal opinion to Defendants' expert report that was produced more than a month *after* Mr. Mattera's inspection.

Moreover, Plaintiffs never sought leave of court to designate Mr. Mattera out of time. Therefore, the Court need not reach the analysis under *Woodworker's Supply* because Plaintiffs failed to establish good cause or excusable neglect to amend the Scheduling Order to allow their untimely disclosure of the Supplemental Reports in the first instance.  *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time:  . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect.").  But even assuming Plaintiffs had successfully overcome the hurdles of good cause and excusable neglect, the *Woodworker's Supply* factors would not provide them any relief.  *See Woodworker's Supply*, 170 F.3d at 993 (identifying the four factors as the prejudice or surprise to the impacted party; the ability to cure the prejudice; the potential for trial disruption; and the erring party's bad faith or willfulness).

Two particular factors permit this Court to reach this conclusion: (1) prejudice or surprise to Defendants, and (2) Plaintiffs' bad faith or willfulness.  *See  Woodworker's Supply*, 170 F.3d at 993 ("A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.").

*Prejudice or Surprise.*  In their Response, Plaintiffs appear to focus on arguing that their late disclosure was harmless to Defendant.  Specifically, Plaintiffs disagree with Defendants' assertion that the Supplemental Reports expand the alleged violations at issue in this case from 15 to 75 violations, arguing that although the Initial Report "group[ed] violations in different areas together," the Supplemental Reports, on the other hand, "number[] the violations as individual rather than grouping them together in categories." [Doc. 34 at 2–3]; *see also* [*id.* at 3 ("The initial report contained pictures with the areas that had issues, however grouped several areas together in one number heading.")].  Plaintiffs also contend that the information in the Supplemental Reports "is not new to Defendants, as the [I]nitial [R]eport clearly had pictures demonstrating" the various alleged violations throughout the Property.  [*Id.* at 2–3].

Despite the foregoing arguments, as mentioned, Plaintiffs also claim that the Supplemental Reports "deal[] with several issues with *newly modified* barriers" in "[a]reas that had been modified during the pendency of this case, most likely as an attempt to moot the case, but instead created new barriers to access on the subject property."  [*Id.* at 3].  Plaintiffs assert that "[t]hose changes occurred after" they visited the Property "and were present at the time [Mr. Mattera] inspected the property."  [*Id.*]; *see also* [*id.* at 4 ("Several of these barriers [in the Supplemental Reports], pursuant to Plaintiffs' expert, did not exist at the time of the initial report and were discovered during the course of discovery after modifications were made to the property.")].  Thus, Plaintiffs' argument continues, Defendants will not be prejudiced by the Supplemental Reports "because Defendants knew or should have known about the barriers present on *their* Property, particularly as the ADA has been in effect for over thirty (30) years."  [*Id.* at 4].  Plaintiffs also argue that Defendants are not prejudiced because Asian Express moved the Court to extend the discovery deadline, which was ultimately extended to June 19, 2022. [*Id.* at 4].  Therefore, Plaintiffs contend,

Defendants "had ample opportunity to conduct discovery regarding the issues they claim were 'expanded'" but "elected not to conduct any such discovery," including not seeking to depose Mr. Mattera regarding his opinions.  [*Id.* at 4–5].

The Court is unpersuaded by Plaintiffs' arguments.  First, the Court respectfully disagrees with Plaintiffs' assertion that the primary difference between the Initial Report and Supplemental Reports is that the Initial Report "contained pictures with the areas that had issues . . . grouped several areas together in one number heading" while the Supplemental Reports identify each specific issue in each category.  [Doc. 34 at 2–3].  For support, Plaintiffs merely point to "issues with aisle width" and "gradient and slope," arguing that "[w]hile the initial report groups several parking spots together," the Supplemental Reports "number[] the violations as individual rather than grouping them together in categories."  [Doc. 34 at 3].  This argument is unsupported by the record.  For instance, in addition to specifying issues with the width and gradient of the parking spaces, the May 5, 2022 Supplemental Report lists an insufficient *number* of accessible parking spaces as one of the non-compliant items on the Property.  *See* [Doc. 29-7 at 12 ("The Plaza has > 150 Spaces with Only 5 Designated as Accessible").  However, an insufficient number of accessible parking spaces is not mentioned anywhere in the Initial Report or the Complaint.  *See* [Doc. 29-2; Doc. 1 at ¶¶ 25, 28].  Moreover, apart from the width and gradient/slope of the parking spaces referenced in their response, Plaintiffs fail to explain or provide any other examples of how, in their opinion, the Supplemental Reports merely specify the architectural barriers that Mr. Mattera referenced in the Initial Report.  *See* [Doc. 34 at 2–3].

Second, Plaintiffs' position that the differences between the Initial Report and Supplemental Reports consist of the categorical grouping versus individual identification of the alleged violations in each document, respectively, *see* [*id.* at 3], is contradicted by Plaintiffs'

argument that the Supplemental Reports address "several issues with *newly modified* barriers" that were "modified during the pendency of this case" and "did not exist at the time of the [I]nitial [R]eport." [*Id.* at 4]. Not only do Plaintiffs fail to explain what specific barriers were modified during the pendency of this case that are now referenced in the Supplemental Reports, but they also fail to provide any support for their assertions, other than claiming that "Plaintiffs have revisited the property and actually encountered these barriers." [*Id.* at 3 n.4].

Third, in arguing that "Defendants' expert had the opportunity to inspect the Defendants' place of public accommodation" and "there is no prejudice . . . because Defendants either knew or should have known about the barriers present on *their* Property," [Doc. 34 at 4], Plaintiffs seem to misinterpret the applicable burden of proof. As Defendants point out, the Federal Rules of Civil Procedure do not impose an obligation upon Defendants to discover the bases of Plaintiffs' claims in order to refute them. *See* [Doc. 37 at 6].

Moreover, Plaintiffs insist that striking the Supplemental Reports "is contrary to the public policy that underpins the ADA," and rely upon *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1043 (9th Cir. 2008), for support. [*Id.* at 3–4]. In that case, the Ninth Circuit held:

> [W]here a disabled person has Article III standing to bring a claim for injunctive relief under the ADA because of at least one alleged statutory violation of which he or she has knowledge and which deters access to, or full use and enjoyment of, a place of public accommodation, he or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim.

*Doran*, 524 F.3d at 1043–44. Plaintiffs' reliance upon *Doran* is misplaced. Indeed, *Doran* "addresse[s] only the plaintiff's *standing.*" *Kelley v. Smith's Food & Drug Centers, Inc.*, 793 F. App'x 787, 790 (10th Cir. 2019). It does not, however, address the relevant issue in the instant Motion to Strike—namely, whether Plaintiffs' failure to disclose the Supplemental Reports by their affirmative expert disclosure deadline was substantially justified or harmless. Nothing in

Plaintiffs' Response leads this Court to a favorable answer for Plaintiffs. Thus, the Court finds that Plaintiffs' inconsistent positions and late disclosures constitute an improper attempt to change the bases for their claims only weeks before the discovery deadline, the result of which would prejudice or surprise Defendants.

*Bad Faith or Willfulness.* Furthermore, Defendants argue that Plaintiffs' mischaracterization of the Supplemental Reports as rebuttal opinions "is evidence of their bad faith or willfulness" and, even if Plaintiffs believe their disclosure was timely and proper, "their expansion of the case from 15 alleged violations to as many as 84 violations at the rebuttal stage of expert disclosures evidences an intent to ambush Defendants." [Doc. 29 at 8]. In the Response, relying upon their mischaracterization of the Supplemental Reports as rebuttal opinions, Plaintiffs assert that they "sent the report[s] to Defendants earlier than necessary in good faith and in the interests of transparency." [Doc. 34 at 1 n.1].

Without agreeing with all of the characterizations Defendants ascribe to Plaintiffs' motives, the Court respectfully agrees with Defendants as to Plaintiffs' willfulness. As explained above, Plaintiffs ask this Court to deny the Motion to Strike on the bases that (1) the Supplemental Reports constitute rebuttal opinions, and (2) therefore, the disclosure was timely so long as it was produced before Plaintiffs' deadline to disclose their rebuttal experts. However, there is no legitimate dispute that Plaintiffs' affirmative expert disclosures were due March 24, 2022. *See* [Doc. 20 at 8]. And, significantly, in arguing that the Supplemental Reports constitute rebuttal opinions, Plaintiffs fail to address the case law regarding what constitutes a rebuttal opinion versus an affirmative opinion; ignore the fact that the opinions in the Supplemental Reports do not address any opinions offered by Defendants' expert witness; and avoid the fact that the Supplemental

Reports are based expressly upon discovery that Plaintiffs' expert conducted *before* Plaintiffs ever received Defendants' expert's report to rebut in the first place.

In this light, the Court finds that Plaintiffs have not established a reasonable basis in law or fact for their late disclosure. There is no genuine dispute concerning Plaintiffs' failure to comply with the affirmative expert disclosure deadline in the Scheduling Order, despite Plaintiffs' arguments to the contrary (i.e., characterizing the Supplemental Reports as rebuttal opinion). Plaintiffs cite no authority that would have permitted them to conclude that the Supplemental Reports reflected rebuttal opinions. Thus, Plaintiffs have not established substantial justification for the late disclosure.

***Harmfulness.*** The court also does not find that Plaintiffs' non-compliance was harmless. *Cf. Lintz v. American General Finance, Inc.,* 1999 WL 619045, *6 (D. Kan. 1999) (noting that non-compliance is harmless only when there is no prejudice to the opposing party). Defendants would be prejudiced by the supplementation because it "[w]ould necessitate an entire re-working of the case," *Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 82 (10th Cir. 2011), given Defendants' and Mr. Garra's reliance upon the opinions contained in Mr. Mattera's Initial Report. In addition, as to whether Defendants could cure the prejudice, "'[a]though enough time and money can cure almost any deficiency, the Court does not believe that perpetual litigation is what the Tenth Circuit meant by 'cure.'" *Id.* (cleaned up). Further, the Court has determined that Plaintiffs' actions were willful, as explained above, including the fact that they sent Defendants two Supplemental Reports which they claim were based, at least in part, on purported "newly modified" barriers at the Property. [Doc. 34 at 4]. Plaintiffs *and* their counsel have filed numerous ADA claims in and outside of this District, and should be well aware of their discovery obligations by now. *See, e.g., Access 4 All Incorporated v. W4K, Inc.*, No. 22-cv-01236-STV, (D.

Colo. May 18, 2022); *Cuesta v. Peoria Lodging LLC*, No. 21-cv-03104-CMA-KLM (D. Colo. Nov. 18, 2021); *Access 4 All, Inc. v. Bamco VI, Inc.*, No. 11-61007-CIV, 2012 WL 33163 (S.D. Fla. Jan. 6, 2012).

In sum, Counts I and II identify 15 alleged violations arising from the parking, entrance access and path of travel, access to goods and services, and public restrooms. *See* [Doc. 1 at ¶¶ 25, 28]. The Initial Report likewise identifies 15 such violations. *See* [Doc. 29-2]. Therefore, any opinions that Mr. Mattera offers outside of the Initial Report were available to him, at the latest, when he conducted his inspection on March 2, 2022.[7] Accordingly, this Court **GRANTS** Defendants' Motion to Strike in its entirety, and precludes Plaintiffs from offering any of Mr. Mattera's opinions in the Supplemental Reports <u>for any purpose</u>.

## II.    Motions for Summary Judgment

As mentioned above, Plaintiffs allege that Defendants "have discriminated against the individual Plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Commercial Property and other business located within the Commercial Property." [Doc. 1 at ¶¶ 24, 27]. In the Motions for Summary Judgment, both Defendants argue that Plaintiffs' claims are moot because Defendants have voluntarily remediated the architectural barriers alleged in the Complaint. *See* [Doc. 35 at 7–12; Doc. 36 at 12–15]. In addition, Asian Express argues that Plaintiffs lack standing to maintain their claims against it under Count II. *See* [*id.* at 5–12]. The Court will address each motion in turn.

### A.    Legal Standards

#### 1.    Federal Rule of Civil Procedure 56

---

[7] In addition, the deadline for amendment of pleadings has long passed on January 10, 2022. *See* [Doc. 20 at 7].

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

### 2.     ADA Title III

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). For violations of Title III, a plaintiff may seek prospective injunctive relief only; monetary damages are unavailable. *See Lewis v. Burger King*, 361 F. App'x 937, 938 n.1 (10th Cir. 2010); *accord A.R. v. Kogan*, 964 F. Supp. 269, 271 (N.D. Ill. 1997) (explaining that relief under Title III is "specifically limited to providing injunctive relief and *not* damages" (emphasis in original)).

### B.     Silver Oak's Motion for Summary Judgment

Silver Oak seeks summary judgment against Plaintiffs on the basis that Plaintiffs' claims are moot because it voluntarily corrected the architectural barriers alleged in the Complaint. *See* [Doc. 35 at 9].

Mootness is a threshold issue as federal court jurisdiction depends on a live case or controversy—without a live, concrete controversy, the Court cannot consider the plaintiff's

claim(s) no matter how meritorious. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (internal quotations and citations omitted). Thus, the inquiry focuses on whether the court's determination of the issues will have "some effect in the real world." *Wyoming v. U.S. Dep't of Argic.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (internal quotations and citation omitted).

However, there is an exception to mootness when the defendant voluntarily ceases the challenged conduct for purposes of evading judicial review, but is free to continue the challenged conduct once the court dismisses the case as moot. *See Brown*, 822 F.3d at 1166. The *defendant* bears the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotations omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). And, as with any case before a federal court, the existence of a live case or controversy must exist at all stages of litigation. *See Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015). "When a party seeks only equitable relief, as here, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). In other words, "a claim for prospective injunction becomes moot once the event to be enjoined has come and gone." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014).

Silver Oak moves for summary judgment against Plaintiffs on the basis that the alleged ADA violations are moot. As explained, "[i]t is well settled that voluntary cessation of illegal

conduct by itself does not make the case moot." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997) ("Defendant's voluntary suspension of its unlawful policy did not completely remove the threat of injury").  Thus, for voluntary cessation to moot Plaintiffs' ADA claims, Defendants must demonstrate that (1) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1214 (10th Cir. 2015) (citations and internal quotation marks omitted).  Indeed, "voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."  *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005).  In other words, if a defendant's minor temporary changes to its establishment rendered an ADA claim moot, this would permit the defendant to "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends."  *Already, LLC*, 568 U.S. at 91.

### 1.    Undisputed Material Facts

Because Plaintiffs did not respond to the Motions for Summary Judgment, the Court deems the properly supported facts offered by Defendants as true.  *See* Fed. R. Civ. P. 56(e)(2).  However, even where certain facts have been deemed true, the Court may not enter summary judgment unless the moving parties carry their burden under Rule 56 of the Federal Rules of Civil Procedure.  *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).  Applying this standard, the Court draws the following undisputed material facts from the record before it:

1.  Silver Oak is the owner of record for the commercial-retail property commonly known and numbered as 4701 North Peoria Street, Denver, Colorado 80239 ("Shopping Center").  [Doc. 1 at ¶¶ 7, 15 & 21; Doc. 16 at ¶¶ 7, 15 & 21].

2.  Silver Oak leases Suite 112 of the Shopping Center to Defendant Asian Express Express, Inc. for use as a restaurant.  [Doc. 1 at ¶ 15; Doc. 16 at ¶ 15].

3.  Asian Express owns and operates a commercial restaurant located at 4701 Peoria Street, Denver, CO 80239.  [Doc. 1 at ¶ 9; Doc. 17 at ¶ 9].

4.  Plaintiff Carlos Cuesta visited the Shopping Center on September 6, 2021, September 10, 2021, and March 16, 2022.  [Doc. 35 at 3; Doc. 35-1 at 3].

5.  The Initial Report disclosed by Plaintiffs' expert, Mr. Mattera, identifies the barriers to access that Plaintiff encountered during his visits to the Property.  [Doc. 35 at 3–6; Doc. 35-1 at 3;  Doc. 35-2].

6.  During his visits on September 6, 2021 and September 10, 2021, Mr. Cuesta personally encountered the following barriers to access at the Shopping Center and in the restaurant:

    a.  Accessible parking spaces lacked compliant aisles as they were less than 60 inches wide.  [Doc. 1 at ¶ 25.A.i.; Doc. 35-1 at 3; Doc. 35-2 at 2].

    b.  Accessible parking spaces lacked clear and level aisles having slopes or cross slopes of greater than 2 percent.  [Doc. 1 at ¶ 25.A.ii.; Doc. 35-1 at 3; Doc. 35-2 at 2].

    c.  Van spaces and aisles had a combined width of less than 192 inches.  [Doc. 1 at ¶ 25.A.iii.; Doc. 35-1 at 3; Doc. 35-2 at 3].

d.     Ramps protruded into the parking areas or access aisles. [Doc. 1 at ¶ 25.A.iv.; Doc. 35-1 at 3; Doc. 35-2 at 3].

e.     There was no route from transit, sidewalk, and parking areas for Plaintiff to access the Property. [Doc. 1 at ¶ 25.B.i.; Doc. 35-1 at 3; Doc. 35-2 at 4].

f.     Accessible routes had changes in level of greater than ¾ of an inch. [Doc. 1 at ¶ 25.B.ii.; Doc. 35-1 at 3; Doc. 35-2 at 4].

g.     A ramp surface contained an excessive slope/side slope of greater than 8.33 percent. [Doc. 1 at ¶ 25.B.iii.; Doc. 35-1 at 3; Doc. 35-2 at 4–5].

h.     Height of counters inside the restaurant were in excess of 36 inches. [Doc. 1 at ¶ 28.A.i.; Doc. 35-1 at 3; Doc. 35-2 at 5].

i.     Table knee and toe spaces inside the restaurant were not a minimum of 27 inches high and 17 inches deep. [Doc. 1 at ¶ 28.A.ii.; Doc. 35-1 at 3; Doc. 35-2 at 5].

j.     There were exposed pipes in the restroom of the restaurant. [Doc. 1 at ¶ 28.B.i.; Doc. 35-1 at 3; Doc. 35-2 at 6].

k.     Plaintiff was unable to use the mirror in the restroom of the restaurant due to the height of the bottom-reflecting surface, which requires a maximum height of 40 inches above the finished floor. [Doc. 1 at ¶ 28.B.ii.; Doc. 35-1 at 3; Doc. 35-2 at 6].

l.     Plaintiff was unable to reach dispenser controls in the restroom of the restaurant, which require a maximum height of 48 inches above the finished floor. [Doc. 1 at ¶ 28.B.iii.; Doc. 35-1 at 3; Doc. 35-2 at 7].

m.   A stall door in the restroom of the restaurant was not self-closing and/or lacked proper hardware.  [Doc. 1 at ¶ 28.B.iv.; Doc. 35-1 at 3; Doc. 35-2 at 7–8].

n.   There were mounted items above the grab bar in the restroom of the restaurant that did not meet the minimum height requirement of 12 inches above the grab bar.  [Doc. 1 at ¶ 28.B.v.; Doc. 35-1 at 3; Doc. 35-2 at 8].

o.   The toilet flush in the restroom of the restaurant was not mounted on the wide side.  [Doc. 1 at ¶ 28.B.vi.; Doc. 35-1 at 3; Doc. 35-2 at 8–9].

7.   Silver Oak hired contractors to remove the exterior architectural barriers on the Property.  [Doc. 35-3 at ¶¶ 5–7].

8.   John Garra is the President of Square One Architecture, Inc., and Square One Accessibility Consulting, and he "works as an ADA Accessibility Architect and Consultant specializing in accessible design requirements of Title III of the ADA."  [Doc. 35-5 at 1].

9.   On December 22, 2021, Mr. Garra visited the restaurant to investigate the barriers to access alleged in the Complaint, and modifications to those barriers were performed at or around the same time.  [*Id.* at ¶¶ 5–7].

10.   On April 14 and 15, 2022, Mr. Garra visited the Property to review all the items noted in Mr. Mattera's Initial Report and compared those items to the then-existing conditions.  [Doc. 35-4 at 2].

11.   As to certain alleged violations on the Property, Mr. Garra found that they did not exist.  [Doc. 35-4].  As to other alleged violations, Mr. Garra determined that the existing conditions were not compliant.  [Doc. 35-5].

12.     The remediations made on the Property are detailed in the charts below, unless otherwise indicated.

### 2.    Application

***Scope of the Issues.***   Before turning to Silver Oak's mootness arguments, the Court must first address Silver Oak's assertion that "in the Tenth Circuit, the ADA barriers alleged in the complaint define the scope of the case for purposes of assessing mootness."  [Doc. 35 at 9 (citing *Kelley v. Smith's Food & Drug Centers, Inc.*, 793 F. App'x 787, 789–90 (10th Cir. 2019))].  Based on this principle, Silver Oak contends that Plaintiffs' "expert report is not relevant to the question of mootness, and would not be even if it had been disclosed on time."  [*Id.*].

The Court agrees that, generally, the barriers alleged in a properly pleaded complaint define the scope of the case for purposes of determining whether the plaintiff's ADA claims are moot. This conclusion is consistent with the Tenth Circuit's holding in *Kelley*.  The relevant issue in that case was "what barriers were alleged in the complaint and were they remediated."  793 F. App'x at 790.  The court, quoting Ninth Circuit precedent, explained that "[i]n general, only disclosures of barriers in a properly pleaded complaint can provide the fair notice required by Rule 8; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute."  *Id.* (changes omitted) (quoting *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011)).  And, although the *Kelley* court did not clarify the procedural posture of the appeal,[8] *Oliver v. Ralph's Grocery Company*, the case relied upon by the *Kelley* court, was on appeal from a district court's order granting the defendants' motion for summary judgment.  *See Oliver*, 654

---

[8] The underlying order from the United States District Court for the District of Utah is brief, explaining the court dismissed the plaintiff's ADA claims with prejudice on the basis that the defendant had "submitted photographs of full remediation."  [ECF No. 73 at 1 n.2], *Kelley v. Smith's Food & Drug Centers, Inc.*, No. 2:17-cv-00803-BSJ (D. Utah Dec. 20, 2018).

F.3d at 904; *see also id.* at 909 ("[F]or purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself.").

This Court's inquiry, however, does not end there.  Although Silver Oak maintains that the Court should not consider Plaintiffs' "expert report" in deciding the Motion for Summary Judgment, it is apparent that Silver Oak is referring only to Mr. Mattera's Supplemental Reports produced in May 2022, and not the Initial Report produced in December 2021, [Doc. 35-2].  *See* [Doc. 35 at 9].  Indeed, Silver Oak expressly relies upon Mr. Mattera's Initial Report in the motion. *See* [*id.* at 3–6 (comparing Plaintiffs' Complaint to the Initial Report in support of factual assertions regarding the barriers that "Plaintiff Carlos Cuesta personally encountered . . . at the Shopping Center and in the Premises").  And Mr. Garra likewise prepared his Expert Report directly in response to Mr. Mattera's Initial Report.  *See* [Doc. 35-4 at 2 (explaining he "visited the property to review the items noted in the Plaintiff's expert report and compared those items to the then present conditions").  Further, the Court has stricken the Supplemental Reports, and Plaintiffs may not use any information in the Supplemental Reports to support their claims.  *See* Fed. R. Civ. P. 37(b)(2).

Accordingly, the Court concludes that, here, the ADA barriers alleged in the Complaint, as well as those identified in Mr. Mattera's Initial Report, define the scope of the case for purposes of assessing Silver Oak's mootness challenges.

***Exterior Barriers.***  With respect to the exterior barriers (i.e., parking and entrance access and path of travel, [Doc. 1 at ¶ 25]), Silver Oak submits into evidence the Affidavit of Todd Millis ("Mr. Millis"), [Doc. 35-3], wherein Mr. Millis avers that he works as a property manager for Silver Oak and is responsible for managing the Commercial Property, [*id.* at ¶ 1].  Mr. Millis states that he "engaged concrete and painting contractors to re-pour, re-paint and—in at least one

instance—relocate handicapped parking spaces outside the Shopping Center." [*Id.* at ¶ 5]. He explains that he had the contractors re-pour fiber mesh concrete, as opposed to asphalt that was previously used, in the modified handicapped parking spaces because he "wanted to permanently correct any accessibility issues" and "[f]iber mesh concrete is longer lasting and stronger than other concretes or asphalt." [*Id.*]. Mr. Millis further explains that the contractor "re-poured ramps from the parking lot to the sidewalk immediately adjacent to the Shopping Center and the exterior doors of the individual units so that the ramps had a less steep slope" and, where necessary, the contractor "replaced or re-poured uneven sections of the sidewalk." [*Id.* at ¶ 6]. In addition, Silver Oak also "replaced trench drain chases to ensure they were flush with the sidewalk." [*Id.*]. Finally, Mr. Millis avers that "[i]t is Silver Oak's intention to maintain the parking lot, ramps and sidewalks in their current conditions, and not to return them to their previous conditions." [*Id.* at ¶ 8].[9]

In addition, Silver Oak submits the Declaration of Mr. Garra, [Doc. 35-5], President of Square One Architecture, Inc. and Square One Accessibility Consulting. [*Id.* at ¶ 1]. Mr. Garra "works as an ADA Accessibility Architect and Consultant specializing in accessible design requirements of Title III of the ADA." [Doc. 35-5 at 1]. Mr. Garra also avers that he has "significant education, training and experience with regard to the Americans with Disabilities Act (ADA) Standards for Accessible Design that were issued in 1991 . . . as well [as] those issued in 2010." [*Id.* at ¶ 2].

Relevant here, Silver Oak also submits Mr. Garra's Expert Report, which addresses his visits to the Property, on December 22, 2021, and April 14 and 25, 2022, to investigate and confirm Silver Oak's modifications of the parking, entrance access, and path of travel barriers

---

[9] Mr. Millis's Affidavit does not mention anything about the remaining alleged barriers in the restaurant regarding "Access to Goods and Services" or "Public Restrooms," *see* [Doc. 1 at ¶ 28], including the steps that Silver Oak and/or Asian Express took to modify those alleged barriers.

identified in Mr. Mattera's Initial Report, *see* [Doc. 35-4 at 2].  As of April 28, 2022, the day Mr.

Garra issued his Report, he found that the exterior barriers identified in the Complaint and Mr.

Mattera's Initial Report had been modified or resolved as follows:

| Barrier(s) Alleged | Modification(s) Performed |
|---|---|
| Parking | |
| i.  Accessible parking spaces near the 7-11 and Family Dollar stores lacked compliant aisles as they were less than 60 inches wide.  [Doc. 1 at ¶ 25.A.i.; Doc. 35-1 at 3; Doc. 35-2 at 2]. | **Near 7-11 store:** No modifications performed as the accessible parking space access aisle is at least 60 inches wide.<br>**Near Family Dollar store:** No modifications performed as the accessible parking space access aisle is at least 60 inches wide.  [Doc. 35-4 at 4–5]. |
| ii.  Accessible parking spaces near the 7-11 and Family Dollar stores lacked clear and level aisles having slopes or cross slopes of greater than 2 percent.  [Doc. 1 at ¶ 25.A.ii.; Doc. 35-1 at 3; Doc. 35-2 at 2]. | **Near 7-11 store:** Not addressed in Mr. Garra's Report.<br>**Near Family Dollar store:** No modifications performed as the accessible parking space access aisle had a slope of 1.9 percent.  [Doc. 35-4 at 5]. |
| iii.  Van spaces and aisles near the Wells Fargo bank had a combined width of less than 192 inches.  [Doc. 1 at ¶ 25.A.iii.; Doc. 35-1 at 3; Doc. 35-2 at 3]. | No modifications performed as the accessible van parking space and adjacent access aisle had a combined width of 192 inches.  [Doc. 35-4 at 6]. |
| iv.  Ramp near the Family Dollar store protruded into the parking areas or access aisles.  [Doc. 1 at ¶ 25.A.iv.; Doc. 35-1 at 3; Doc. 35-2 at 3]. | No modifications performed as the accessible curb ramp did not project into the accessible parking space or its access aisle.  [Doc. 35-4 at 6]. |
| Entrance Access and Path of Travel | |
| i.  There was no route from transit, sidewalk, and parking areas for | No modifications performed.[10] |

---

[10] In Mr. Garra's Report, he states that no action is required because "[p]er exception number 2 contained in Section 206.2.1 of the 2010 Standards, an accessible route is . . . not required at this location since a pedestrian route does not exist."  [Doc. 35-4 at 6].  The ADA Accessibility Guidelines ("ADAAG") "establish[] the technical standards required for 'full and equal enjoyment.'"  *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citing 28 C.F.R. § 36.406(a)); 28 C.F.R. Pt. 36, App. A; *see also Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024–25 (9th Cir. 2008) (describing the ADA's regulatory framework). "The 2010 Standards consist of the 2004 ADAAG, 36 C.F.R. pt. 1191, apps. B & D, and subpart D of 28 C.F.R. pt. 36." *Colo. Cross Disability Coalition v. Abercrombie & Fitch Co.*, 957 F. Supp. 2d 1272, 1275 (D. Colo. 2013) (citation omitted), *aff'd in part, rev'd in part*, 765 F.3d 1205 (10th Cir. 2014).

| | | |
|---|---|---|
| | Plaintiff to access the Property. [Doc. 1 at ¶ 25.B.i.; Doc. 35-1 at 3; Doc. 35-2 at 4]. | |
| ii. | Accessible routes near the 7-11 store and Wells Fargo bank had changes in level of greater than ¾ of an inch. [Doc. 1 at ¶ 25.B.ii.; Doc. 35-1 at 3; Doc. 35-2 at 4]. | **Near 7-11 store:** No modifications performed as the accessible route from the accessible parking space access aisle to the facility entrance did not have a chance in level exceeding ¼ inch. **Near Wells Fargo bank:** No modifications performed as the accessible parking space access aisle to the facility entrance did not have a change level exceeding ¼ inch. [Doc. 35-4 at 7]. |
| iii. | A ramp surface near the Family Dollar store and Wells Fargo bank contained an excessive slope/side slope of greater than 8.33 percent. [Doc. 1 at ¶ 25.B.iii.; Doc. 35-1 at 3; Doc. 35-2 at 4–5]. | **Near Family Dollar store:** No modifications performed as the accessible ramp had a running slope of 6.3 percent. **Near Wells Fargo bank:** No modifications performed as the accessible ramp had a running slope of 3.1 percent. [Doc. 35-4 at 8]. |

Mr. Garra's Report expressly did not include responses to the portion of Mr. Mattera's Initial Report related to "Access to Goods and Services" in the restaurant. [Doc. 35-4 at 8]; *see also* [Doc. 1 at ¶ 28.A.]. Mr. Garra's Report also does not mention anything about the portion of the Initial Report related "Public Restrooms" in the restaurant. *See* [*id.* at ¶ 28.B.].

Based on the foregoing, the Court finds that Silver Oak has sufficiently established that Plaintiffs' claims are moot with respect to all the exterior barriers *except* the accessible parking space(s) near the 7-11 store. Plaintiffs have failed to adduce evidence that there is a reasonable

---

Section 206.2.1 of the 2010 Standards provides that "[a]t least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve." 36 C.F.R. pt. 1191, app. B § 206.2.1. Exception 2 provides that "[a]n accessible route shall not be required between site arrival points and the building or facility entrance if the only means of access between them is a vehicular way not providing pedestrian access." *Id.*; *see also* 28 C.F.R. pt. 36, app. B ("The 2010 Standards also add two exceptions that exempt site arrival points and accessible facilities within a site from the accessible route requirements where the only means of access between them is a vehicular way that does not provide pedestrian access."). Based on the photos provided in Mr. Mattera's and Mr. Garra's Reports, there does not appear to be a pedestrian route from the street to the entrances of the stores at the Property. Thus, the Court finds that Exception 2 applies.

expectation that the alleged violations with respect to the majority of the exterior barriers will recur, or that Silver Oak would expend additional time and resources to hire contractors to undo their remediations. *Cf., e.g.*, *Kelley v. Cafe Rio, Inc.*, No. 2:17-cv-783 TS, 2017 WL 5499781, at *4 (D. Utah Nov. 15, 2017) (finding that the plaintiff "provided no evidence or reasoning supporting that Defendant is likely to bear the cost of undoing its remedial efforts only to defy the ADA requirements and risk further litigation"); *Shelton v. Cafe Rio, Inc.*, No. 1:17-cv-00070, 2017 WL 4402425, at *3 (D. Utah Oct. 2, 2017) ("Shelton does not offer evidence as to why she believes the violation will recur. In fact, she offers no legitimate reason why Café Rio would desire to dig up the cemented sign if the case [were] dismissed as moot. Because Café Rio has voluntarily complied with the alleged violation, and the alleged violation is not likely to recur because the remediation is permanent in nature, Shelton's claim is moot.").

However, the Court finds that Silver Oak fails to meet its burden of demonstrating that it has modified one exterior barrier: the accessible parking space(s) near the 7-11 store. Specifically, Silver Oak acknowledges (1) Plaintiff's allegation that "[a]ccessible parking spaces lacked clear and level aisles having slopes or cross slopes of greater than 2 percent"; and (2) Mr. Mattera's Report "clarified that these conditions existed in parking spaces near 7/11 and Family Dollar stores in the Shopping Center." [Doc. 35 at 4 (citing [Doc. 35-2 at 2])].

Mr. Garra's Report, however, only mentions remediations made to the accessible parking space(s) in front of the Family Dollar store, and it fails to mention the accessible space(s) in front of the 7-11 store. *Compare* [Doc. 35 at 4 ("Plaintiffs' expert later clarified that these conditions existed in parking spaces near 7/11 and Family Dollar stores in the Shopping Center.")] *and* [Doc. 35-2 at 2] *with* [Doc. 35-4 at 5 ("The accessible parking space access aisle near *Family Dollar* has a slope of 1.9 percent where a maximum slope of 2.08 percent is required per Section 205 of the

2010 Standards." (emphasis added))].[11]   Accordingly, Plaintiffs' ADA claim under Count I remains live as to the accessible parking space(s) near the 7-11 store. *See, e.g.*, *Jones v. Farahdel*, No. 2:21-cv-01849-RGK-JPR, 2022 WL 3012181, at *4 (C.D. Cal. Feb. 24, 2022) (finding the defendant carried its burden of showing remediations with respect to some, but not all, of the alleged barriers).

**Barriers Inside the Restaurant.**   In addition, the Court finds that Silver Oak has sufficiently established mootness with respect to Count II regarding all except one of the alleged barriers inside the restaurant.   In his Declaration, Mr. Garra states that Asian Express engaged his firm "to review their restaurant for an inspection and to review the Complaint," and he visited the restaurant on December 22, 2021.   [Doc. 35-5 at ¶¶ 3, 5].   He also states that the barriers identified in the Complaint "were of a minor nature and could be modified during regular business hours." [*Id.* at ¶ 4].   Further, Mr. Garra declares that all such violations "have been modified" as follows:

| Barrier(s) Alleged | Modification(s) Performed |
|---|---|
| Access to Goods and Services | |
| i.   Height of counters inside the restaurant were in excess of 36 inches. [Doc. 1 at ¶ 28.A.i.; Doc. 35-1 at 3; Doc. 35-2 at 5]. | No modifications performed as the counters at issue did not exceed 36 inches. [Doc. 35-5 at ¶ 7(1)]. |
| ii.   Table knee and toe spaces inside the restaurant were not a minimum of 27 inches high and 17 inches deep. [Doc. 1 at ¶ 28.A.ii.; Doc. 35-1 at 3; Doc. 35-2 at 5]. | Two tables were replaced so there are four accessible seating locations. The tabletops do not exceed 34 inches above the floor, the knee space provided is a minimum of 27 inches high by at least 30 inches wide by at least 17 inches deep. [Doc. 35-5 at ¶ 7(2)]. |
| Public Restrooms | |
| i.   There were exposed pipes in the restroom of the restaurant. [Doc. 1 at ¶ 28.B.i.; Doc. 35-1 at 3; Doc. 35-2 at 6]. | The water supply and drainpipes under the lavatory in the Men's Accessible Restroom were modified so they are insulated or otherwise |

---

[11] The Court notes that it is not entirely clear that there is a photograph in Mr. Mattera's Report depicting the alleged violation associated with the 7-11 store. *See* [Doc. 35-2 at 2]. Nevertheless, as noted above, Silver Oak relies upon the identification of the specific barriers in Mr. Mattera's Report in support of its Motion for Summary Judgment. *See* [Doc. 35 at 4].

| | | |
|---|---|---|
| | | configured to protect against contact. [Doc. 35-5 at ¶ 7(3)]. |
| ii. | Plaintiff was unable to use the mirror in the restroom of the restaurant due to the height of the bottom-reflecting surface, which requires a maximum height of 40 inches above the finished floor. [Doc. 1 at ¶ 28.B.ii.; Doc. 35-1 at 3; Doc. 35-2 at 6]. | The mirror in the Men's Accessible Restroom was modified to have a maximum height of 40 inches measured to the bottom of the non-beveled, reflective surface. [Doc. 35-5 at ¶ 7(4)]. |
| iii. | Plaintiff was unable to reach dispenser controls in the restroom of the restaurant, which require a maximum height of 48 inches above the finished floor. [Doc. 1 at ¶ 28.B.iii.; Doc. 35-1 at 3; Doc. 35-2 at 7]. | The paper towel dispenser in the Men's Accessible Restroom was modified so it is mounted with all operating parts between 15 and 48 inches above the floor. [Doc. 35-5 at ¶ 7(5)]. |
| iv. | A stall door in the restroom of the restaurant was not self-closing and/or lacked proper hardware. [Doc. 1 at ¶ 28.B.iv.; Doc. 35-1 at 3; Doc. 35-2 at 7–8]. | The toilet compartment door in the Men's Accessible Restroom door was modified to have a door pull on both sides of the door near the latch. [Doc. 35-5 at ¶ 7(6)]. |
| v. | There were mounted items above the grab bar in the restroom of the restaurant that did not meet the minimum height requirement of 12 inches above the grab bar. [Doc. 1 at ¶ 28.B.v.; Doc. 35-1 at 3; Doc. 35-2 at 8]. | The toilet paper dispenser in the Men's Accessible Restroom was modified so that it is 12 inches above the grab bar and the outlet of the dispenser is 15 inches minimum and 48 inches maximum above the finished floor. [Doc. 35-5 at ¶ 7(7)]. |
| vi. | The toilet flush in the restroom of the restaurant was not mounted on the wide side. [Doc. 1 at ¶ 28.B.vi.; Doc. 35-1 at 3; Doc. 35-2 at 8–9]. | The accessible toilet flush control (handle) in the Men's Accessible Restroom was modified so that it is located on the wide, open side.[12] [Doc. 35-5 at ¶ 7(8)]. |

Based on these modifications, the Court also finds that Silver Oak has sufficiently established that Plaintiffs' claims are moot with respect to all the barriers alleged in the restaurant *except* the toilet flush handle. As a preliminary matter, the Court acknowledges that Silver Oak fails to make any express argument regarding the permanence of the modifications in the restaurant, including the likelihood the alleged violations can reasonably be expected to recur.

---

[12] As explained in greater detail below, the Court disagrees that Defendants have sufficiently met their burden of establishing that they have performed this remediation.

*Compare* [Doc. 35 at 9 (relying upon Mr. Millis's Affidavit, [Doc. 35-3 at ¶¶ 5–8], to support its position that "Silver Oak removed the architectural barriers using longer-lasting materials and methods, and with an intention that the repairs be permanent")] *with* [Doc. 35-3 at ¶ 5 (Mr. Millis's explaining that he "sought to correct the architectural barriers that were alleged to exist on the *exterior* of the Shopping Center" (emphasis added))].

Nevertheless, "[i]n making a determination about whether the facts indicate a danger of future violations . . ., [courts] consider[] the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Watanabe v. Home Depot USA, Inc.*, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (citation omitted). Here, based on the nature of the modifications performed and Silver Oak's submissions, including Mr. Garra's review of the modifications in the restaurant "to confirm that all of the allegations in the Complaint had been fixed," [Doc. 35-5 at ¶ 8], the Court concludes that Silver Oak has sufficiently established that the majority of the alleged barriers in the restaurant have been modified to address the issues identified in the Complaint and Mr. Mattera's Report. Indeed, it is undisputed that Silver Oak and/or Asian Express have remedied (where applicable) the majority of the barriers in the restaurant alleged in the Complaint, and the Court does not reasonably expect that Silver Oak will (1) remove the two tables that were replaced to allow more accessible seating; (2) remove the protections that Asian Express added under the restroom sink to surround the water supply and drain pipes; (3) change the heights of the mounted mirror, paper towel dispenser, or toilet paper dispensers from their currently fixed positions; or (4) remove the door pull that Asian Express installed on both sides of the stall door. *See Langer v. Siguenza*, No. CV 19-9095 PA (AGRx), 2020 WL 4919603, at *3 (C.D. Cal. July 9, 2020) (finding the defendants' evidence weighed in favor of finding that the ADA violations were not reasonably likely to recur where the

defendants had "taken substantial affirmative steps to become compliant and prevent future violations" by, *inter alia*, "install[ing] accessible dining tables, and adjust[ing] the heights of the mirror and toilet seat dispenser in the restroom," and hired an expert to review the property).  Nor have Plaintiffs responded to the Motion for Summary Judgment and adduced any evidence that would challenge this conclusion.

However, the Court finds that Silver Oak has not sufficiently demonstrated that it and/or Asian Express has modified the toilet flush control (handle), as claimed in Mr. Garra's Report. *See* [Doc. 35-5 at ¶ 7(8)].  For the remaining barriers in Mr. Garra's Report, he provides clear photographs demonstrating remediation.  *See* [*id.* at ¶¶ 7(1)–(8)].  Not so for the toilet flush handle. Specifically, Mr. Garra states that the toilet flush handle "was modified so that it is located on the wide, open side" of the toilet; and he includes a photograph of a toilet with the flush handle located on the left side, indicating the "wide, open side" of the toilet at issue is indeed the left side of the toilet.  [*Id.* at ¶ 7(8)].  However, the photo of the toilet in Mr. Mattera's report—which Silver Oak relies upon, *see* [Doc. 35 at 6 (citing [Doc. 35-2 at 8–9])]—also shows the flush handle is located on the left side, while the wide, open side of the toilet is located on the right.  *See* [Doc. 35-2 at 8– 9].  In addition, the toilet photographed in Mr. Garra's Report appears to be a different toilet than the one identified in Mr. Mattera's Report.  *Compare* [Doc. 35-5 at ¶ 7(8)] *with* [Doc. 35-2 at 9]. Therefore, it is unclear how the toilet flush handle was modified when the handle is in the same position in both the before and after photographs.  Likewise, Silver Oak also fails to explain, for instance, whether it and/or Asian Express simply installed a new toilet and moved its position further to the right, consequently making the left side of the toilet the wide, open side such that the toilet flush handle is now properly placed.  Based on these issues, this Court concludes that Silver Oak has not carried its initial burden of proof with respect to the toilet flush handle.

In sum, Plaintiffs' ADA claims remain live as to (1) the accessible parking space(s) near the 7-11 store; and (2) the toilet flush handle in the restaurant. As to all other alleged violations, Plaintiffs have already received the relief they would be entitled to if the Court were to issue an injunction, given the remediations, and therefore those claims are moot.

### 3. Conclusion as to Silver Oak's Motion for Summary Judgment

Based on the foregoing, Silver Oak's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

### C. Asian Express's Motion for Summary Judgment

Asian Express moves for summary judgment on standing and mootness grounds. *See* [Doc. 36]. First, Asian Express argues that Plaintiffs cannot demonstrate that they have standing to bring their claims on the basis that Mr. Cuesta does not sufficiently allege his intent to return to the restaurant. *See* [*id.* at 5–12]. Second, in the alternative, Asian Express contends that it has remedied the alleged barriers identified in the Complaint, and therefore Plaintiff's claims against it under Count II are moot. [*Id.* at 12–16].

***Choice Between Jurisdictional Issues.*** Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

"Mootness and standing are jurisdictional."  *Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (citing *WildEarth Guardians v. Pub. Serv. Co. of Colo.,* 690 F.3d 1174, 1182 (10th Cir. 2012)).  Because "[t]here is no mandatory 'sequencing of nonmerits issues,'" courts have "leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584–85 (1999)).

Here, given that both Defendants seek summary judgment on similar mootness grounds— namely, that Plaintiffs' claims are moot because Defendants have remediated the architectural barriers alleged in the Complaint—and this Court has already addressed the remediations performed in the restaurant in its analysis of Silver Oak's Motion for Summary Judgment, the Court will begin its analysis by addressing Asian Express's mootness arguments, and then turn to its standing challenge.

### 1.      Mootness

Asian Express insists that it has remediated the violations alleged in the Complaint and, therefore, Plaintiff's claims against it under Count II are moot.  *See* [Doc. 36 at 14–15].  As a preliminary matter, like Silver Oak, Asian Express urges the Court to look only to Plaintiffs' Complaint to determine the alleged violations.  *See* [*id.*].  Indeed, Asian Express spends the majority of its mootness challenge arguing that the Court should not consider Mr. Mattera's Supplemental Reports produced in May 2022.  [*Id.*].  For the same reasons explained above with respect to Silver Oak's Motion for Summary Judgment, the Court concludes that the ADA barriers alleged in the Complaint and Mr. Mattera's Initial Report define the scope of the case for purposes of assessing Asian Express's mootness challenges.[13]

---

[13] In addition, like Silver Oak, Asian Express produces with its motion, *inter alia*, Mr. Mattera's Initial Report.  [Doc. 36-5 at 20–28]; *see also* [Doc. 36 at 1 (asserting under its "Statement of

In any event, given that Plaintiffs assert their claims under Count II regarding the alleged barriers in the restaurant against both Defendants, the Court's conclusions on this issue with respect to Silver Oak's Motion for Summary Judgment apply equally here. Specifically, Plaintiff's claims under Count II are moot only with respect to the first seven out of eight barriers alleged under that Count. *See* [Doc. 1 at ¶ 28].[14] As to the eighth barrier—the mounting of the toilet flush handle on the narrow side of the toilet—the Court finds here that, for the same reasons explained above as to Silver Oak, Asian Express has not sufficiently demonstrated that it and/or Silver Oak has modified the toilet flush handle, as claimed in Mr. Garra's Report. *See* [Doc. 35-5 at ¶ 7(8); Doc. 36-1 at ¶ 7(8)].

## 2. Standing

"The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). Standing is assessed as of the date when the complaint was filed. *See Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1217 (10th Cir. 2018) (explaining that the court "must determine standing as of the time the action is brought." (internal quotations omitted)). To establish standing, a plaintiff must show he (1) suffered an injury in fact that (2) is fairly traceable to the defendant's conduct and (3) can be redressed by a favorable judicial decision. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020). The elements of standing "are not mere pleading requirements but rather an

---

Material Facts" that "[o]n December 20, 2021, Plaintiffs designated their affirmative expert" and included his Initial Report)].

[14] In addition, Asian Express states that "the modifications and repairs that [it] undertook are permanent changes," without citation to evidence in the record. [Doc. 36 at 15]. Nevertheless, the Court finds that the record evidence supports that the remediations made in the restaurant— apart from the toilet flush handle—are intended to be permanent, and there is nothing in the record that leads this Court to a different conclusion. *See, e.g.*, *Langer*, 2020 WL 4919603, at *3.

indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Therefore, Article III standing cannot be assumed; the court must resolve issues of standing before it may reach the merits of an issue. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016).

"To prevail at summary judgment on standing grounds, the defendant must show that the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing." *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007) (citations omitted); *see also Petty v. Bd. of Cnty. Comm'rs of Cnty. of Wyandotte, Kan.*, 168 F.R.D. 46, 49 (D. Kan. 1996) ("If the moving party does not bear the burden of proof at trial, it must show 'that there is an absence of evidence to support the non-moving party's case.'" (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "The specific facts alleged in the complaint, as well as additional information uncovered by discovery, should be accepted as true and construed in favor of the plaintiff." *WildEarth Guardians v. Colo. Springs Utils. Bd.*, No. 17-cv-00357-CMA-MLC, 2018 WL 317469, at *4 (D. Colo. Jan. 8, 2018) (citing *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 109 n.22 (1979)). A defendant will prevail on standing grounds if "the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010) (citation omitted).

Here, Asian Express argues that Plaintiffs cannot establish the first element of standing— an injury in fact—because there is no threat of future harm. [Doc. 36 at 5–12].

***Injury in Fact.*** The injury in fact requirement "involves invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014). This "requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief." *Tandy*, 380 F.3d at 1283. "When prospective

relief—such as an injunction—is sought, 'the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.'" *Colo. Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (quoting *Tandy*, 380 F.3d at 1283)). "Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Tandy*, 380 F.3d at 1283 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). However, "[t]he threatened injury must be 'certainly impending' and not merely speculative." *Id.* (citing *Friends of the Earth*, 528 U.S. at 190). Conjectural or hypothetical injuries, or future injuries that are not certainly impending, are insufficient. *See Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). On the other hand, a plaintiff seeking retrospective relief "satisfies the 'injury in fact' requirement if []he suffered a past injury that is concrete and particularized." *Tandy*, 380 F.3d at 1284.

In the Complaint, Plaintiffs seek, *inter alia*, (1) a declaratory judgment that Defendants are in violation of the ADA; and (2) an injunction against Defendants and an order that Defendants remediate the architectural barriers at the Property and modify its policies so that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." [Doc. 1 at 11]. A declaratory judgment and injunction are forms of prospective relief. *See, e.g.*, *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (declaratory relief); *Colo. Cross*, 765 F.3d at 1211 (injunctive relief). *But see PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002) (explaining that "[w]hile a declaratory judgment is generally prospective relief, in some situations it has been recognized as retrospective"; and "consider[ing] declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires [the court] to declare whether a past . . . violation occurred").

Thus, to establish injury in fact for purposes of prospective relief, Plaintiffs must "be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy*, 380 F.3d at 1283. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, (1974); *see also Dias v. City and Cty. of Denver*, 567 F.3d 1169, 1177 (10th Cir. 2009) ("Only by alleging a continuing injury can a plaintiff seeking prospective relief establish an injury in fact.").

***Intent to Return.*** The Court's focus is on whether Plaintiffs have established a certainly impending future injury. To satisfy this requirement, Plaintiffs must adduce sufficient evidence "suggest[ing] a concrete, present plan to return to" the restaurant. *Colo. Cross*, 765 F.3d at 1212. The Tenth Circuit has found this requirement met when a plaintiff establishes his intent to return "several times each year." *Brito v. Denver Convention Ctr. Hotel Auth.*, No. 20-cv-02719-PAB-KMT, 2021 WL 4149619, at *3 (D. Colo. Sept. 13, 2021) (quoting *Tandy*, 380 F.3d at 1284–85) (quotation marks omitted).

In its motion, Asian Express cites a four-factor test endorsed by others in this District as the operative test for determining whether a plaintiff has satisfied an injury in fact as demonstrated by his intent to return to a public accommodation. *See* [Doc. 36 at 6–7]. This test asks the court to consider: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." [*Id.* (citations omitted)]; *see also Brito v. Big Lots Stores, Inc.*, No. 17-cv-02052-CMA-KMT, 2017 WL 5665057, at *3 (D. Colo. Nov. 27, 2017) (collecting cases). In addition, Asian Express points the Court to a separate "intention test" articulated by some courts in this District, *see* [Doc. 36 at 7], where the operative

inquiry is "whether a plaintiff intends to return to or use the allegedly non-complying premises in the future in order to determine if the plaintiff has standing for prospective relief," without reference to any specific factors. *Brito*, 2021 WL 4149619, at *3 (citing *Colo. Cross*, 765 F.3d at 1211 and *Tandy*, 380 F.3d at 1283–84).

Although the Tenth Circuit has not expressly endorsed either test, *see Cohan v. Aurora Hosp., LLC*, No. 19-cv-00784-PAB-NRN, 2020 WL 1322866, at *3–4 (D. Colo. Mar. 20, 2020), this Court has recently found that the four-factor test is consistent with decisions from the Tenth Circuit analyzing ADA plaintiffs' intentions to return to utilize public accommodations. *See Meggs v. Dillon Companies, LLC*, No. 21-cv-02030-NYW, 2022 WL 4079337, at *5 (D. Colo. Sept. 6, 2022). In *Dillon Companies*, the Court also "recognize[d] that the four-factor test fits under the general rubric of the intention test, and the Tenth Circuit case law does not indicate that the four factors are exhaustive." *Id.* at *8.

### 3.    Application

Under either the four-factor test or the intention test, the Court finds that Asian Express has not shown that "the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing." *Bond*, 500 F.3d at 1132.

Asian Express argues, *inter alia*, that Mr. Cuesta has not sufficiently established his intent to return to the restaurant, despite indicating otherwise in the Complaint. *See* [Doc. 36 at 7, 10]. Asian Express also contends that Mr. Cuesta's discovery responses do not indicate when or how often he visited the restaurant. [*Id.* at 11]. However, Asian Express acknowledges that Mr. Cuesta's interrogatory responses state that he visited the Property as recently as March 16, 2022. [Doc. 35-1 at 3]; *see also* [Doc. 36 at 10–11]. Asian Express also provides a receipt from Mr.

Cuesta's visit to the restaurant that day.  *See* [Doc. 36-5 at 83].  Accordingly, Asian Express is not entitled to summary judgment against Plaintiffs on the issue of standing.

**4.**     **Conclusion as to Asian Express's Motion for Summary Judgment**

Based on the foregoing, Asian Express's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendants' Motion to Strike [Doc. 29] is **GRANTED**;

(2)     Defendant Silver Oak Associates, Ltd., LLP's Motion for Summary Judgment [Doc. 35] is **GRANTED IN PART AND DENIED IN PART**;

(3)     Defendant Crazy Asian Express, Inc.'s Motion for Summary Judgment [Doc. 36] is **GRANTED IN PART AND DENIED IN PART**;

(4)     Plaintiffs' ADA claims remain live as to the issues of (a) the accessible parking space(s) near the 7-11 store; and (b) the toilet flush handle in the restaurant.  As to all other alleged violations, Plaintiffs have already received the relief they would be entitled  to if the Court were to issue an injunction, and therefore those claims are **MOOT**; and

(5)     The Final Pretrial Conference scheduled for October 12, 2022 at 10:00 a.m. is **RE-SET** <u>in time only</u> to 11:00 a.m. the same day, in Courtroom A-502.

DATED:  September 29, 2022                      BY THE COURT:

                                                _____
                                                Nina Y. Wang
                                                United States District Judge